# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NATALIA NICOLE
HOFFMAN-SHAW,

      Plaintiff,

                            **Civil Action 2:18-cv-836**
                            **Judge Algenon L. Marbley**
    v.                        **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Natalia Nicole Hoffman-Shaw ("Plaintiff"), brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner")

denying her application for Supplemental Security Income.   This matter is before the

undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9),

the Commissioner's Response in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and

the administrative record (ECF No. 8).   For the reasons that follow, it is **RECOMMENDED**

that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be

**AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed her application for Supplemental Security Income on

December 31, 2014.   Plaintiff's application was denied initially on June 2, 2015, and upon

reconsideration on October 6, 2015.   Plaintiff sought a hearing before an administrative law

judge.   Administrative Law Judge Matthew Winfrey ("ALJ") held a hearing on August 9, 2017,

at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Eric Walter Pruitt (the "VE") also appeared and testified at the hearing. On December 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On June 8, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Specific Errors (ECF No. 9), Plaintiff raises two contentions of error. Plaintiff first asserts that the ALJ impermissibly failed to assess the opinions of Rhonda Lilley, Ph.D., for controlling weight as required by the treating physician rule. Plaintiff next contends that the ALJ's finding that Plaintiff will be "off tasks 8% of the time, approximately five minutes per hour" was not supported by substantial evidence. Plaintiff therefore posits that the ALJ's hypothetical to the VE did not accurately capture all of her mental limitations, and that the VE's testimony does not constitute substantial evidence that she can perform work in the national economy.

## II.    THE ADMINISTRATIVE DECISION

On December 1, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 15-24.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

1.  Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

since December 31, 2014, the application date.   (*Id.* at 17.)   At step two, the ALJ found that

Plaintiff had the severe impairments of anxiety, obsessive-compulsive disorder, and depression.

(*Id.*)   At step three of the sequential process, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (*Id.* at 17-18.)   The ALJ

set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple routine repetitive tasks but not at a production rate pace, such as no assembly line work, limited to simple work-related decisions, can interact with supervisors and coworkers occasionally, but no interaction with the public, can tolerate occasional changes in the workplace and will be off tasks 8% of the time, approximately five minutes per hour.

(*Id*. at 19.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's testimony regarding her

symptoms and limitations was not fully consistent with the evidence.   (R. at 22.)   The ALJ also

---

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

considered the medical opinion evidence and assigned "little" weight to the opinions of consultative examiner John S. Reece, Psy.D, state-agency reviewing consultants Juliette Savitscus, Ph.D. and Cynthia Waggonor, Psy. D., and evaluating psychologist Rhonda Lilley, Ph.D. (R. at 21-22.)

At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 23.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. (*Id*. at 23.) The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. (*Id*. at 24.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.   ANALYSIS

As set forth above, Plaintiff raises two contentions of error.   First, she asserts that the ALJ erred in failing to apply the treating physician rule in considering Dr. Lilley's opinions. She next contends that the ALJ's finding that Plaintiff will be "off tasks 8% of the time, approximately five minutes per hour" is not supported by substantial evidence.   Consequently, she asserts that the hypothetical question posed to the VE was flawed and that the VE's testimony does not constitute substantial evidence that she can perform work in the national economy.   The undersigned considers Plaintiff's contentions of error in turn.

## A.    The ALJ's Consideration of Rhonda Lilley, Ph.D.'s Opinion

Plaintiff first contends that the ALJ improperly failed to apply the treating physician rule in assessing the opinions of Dr. Lilley.   The Commissioner counters that Dr. Lilley was not a treating physician.   The Commissioner further posits that the ALJ nonetheless properly

evaluated Dr. Lilley's opinions and provided good reasons for assigning them "little" weight. The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

The ALJ must consider all medical opinions that he receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(1). The source of a medical opinion "dictates the process by which the Commissioner accords it weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has explained as follows:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Id.*, at 375.

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If a treating physician's opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."   20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.   *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).   Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.   Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."   20 C.F.R. § 416.927(c)(2).   Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).   The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."   *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.   Thus, the reason-giving requirement is "particularly important

when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

The "good reason" requirement does not apply where the medical source has not treated the claimant. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Regardless of the source of a medical opinion, however, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c). In addition, the regulations provide that where the ALJ does not assign controlling weight to a treating physician, he or she must explain the weight assigned to the opinions of the medical sources. 20 C.F.R. § 416.927(c).

As discussed above, the ALJ assigned "little weight" to the opinions of Dr. Lilley. Dr. Lilley completed a report dated February 29, 2016, and an addendum, dated August 7, 2017. (R. at 435-38, 830-32.) In her February 29, 2016 opinion, Dr. Lilley stated that she had first seen Plaintiff on July 23, 2015, and last seen her on November 19, 2015. (R. at 436.) She opined that Plaintiff had obsessive compulsive disorder, bipolar disorder, and generalized anxiety disorder. (*Id.*) She noted that Plaintiff was in therapy at Syntera, and that she has been in treatment with another clinician for the last several years. (R. at 436, 438.) Dr. Lilley

opined that Plaintiff "has minimal ability to tolerate stressors seen in most work setting[s]. Her ability to sustain full-time or even part-time employment is very poor. I do not see this individual capable of work." (R. at 438.) On August 7, 2017, Dr. Lilley submitted an "addendum" to her February 29, 2016 opinion. (R. at 830.) In this addendum, Dr. Lilley indicated that Plaintiff "was seen for evaluative purposes . . . on 7.23.15, 8.22.15, 11.19.15, and 6.29.16," that "[s]he has not been seen since 11.19.15," and that Dr. Lilley "ha[s] not engaged in her treatment." (R. at 830.) Dr. Lilley found that Plaintiff was in the average range of intelligence. (R.at 831.) She opined that Plaintiff "is likely to have trouble with concentrating and finds it difficult to keep her mind on a task or job," and that she has limitations in "judgment, decision-making, and problem solving skills." (R. at 831-32.) She noted that Plaintiff is "generally uncomfortable in social situations, finds it difficult to talk to people who she does not know, and avoids people if given the opportunity." (R. at 832.) Dr. Lilley also opined that Plaintiff is likely to have suicidal thoughts and attempts. (*Id.*) Dr. Lilley made the following conclusions:

> In conclusion, [Plaintiff] has been in treatment with several clinicians, but her presentation in 2015 would indicate that she has **not** responded to treatment. She was seen for a follow-up session on 6.29.16 and no improvements were apparent. Thus, [Plaintiff's] ability to tolerate stressors that might be present in the work place are severely limited. She has severe limitations in her ability to interact with supervisors and co-workers in the work place. Her ability to sustain full-time or even part-time employment is severely limited. Her disability is not a function of any cognitive limitation, as her abilities are in the average range, but are the direct manifestation of her Obsessive Compulsive Disorder, her Bipolar Disorder I-depressed, and her Generalized Anxiety Disorder.

(R. at 832.)

Although Plaintiff maintains that the ALJ failed to state whether Dr. Lilley was a treating source, apply the treating physician rule, or give good reasons for assigning "little weight" to Dr.

Lilley's opinions, the ALJ provided the following lengthy discussion of how he arrived at his determination:

> Rhonda Lilley, Ph.D., completed a functional capacity form on February 29, 2016 and provided an addendum to this form on August 7, 2017 (Exhibit 5F, 11F). Her opinions have been given little weight for several reasons (Exhibit 5F). First, it appears that Dr. Lilley only treated the claimant on a few occasions and thus she did not have a longitudinal perspective of the claimant's functioning (Exhibit 11F/3). Next, Dr. Lilley's opinions are not consistent with the treatment notes. For example, Dr. Lilley noted that the claimant resisted leaving home, could not attend college and had no interests outside the home, yet the evidence shows that the claimant was able to complete college courses, attend a convention where she met her favorite actor and occasionally go out to eat and go to church. While Dr. Lilley opined that the claimant's symptoms did not respond to treatment, the claimant testified that medications helped her and the treatment notes show that often the claimant responded to treatment and did not present with any abnormal findings on psychological testing (Exhibits 9F, 10F). Finally, Dr. Lilley's opinion that the claimant cannot sustain work is a determination that is reserved for the Commissioner.

(R. at 22.) The undersigned finds no error in the ALJ's consideration and weighing of Dr. Lilley's opinion. The ALJ reasonably explained that he assigned "little" weight to Dr. Lilley's opinion because (1) "Dr. Lilley only treated the claimant on a few occasions and thus she did not have a longitudinal perspective of the claimant's functioning," (2) "Dr. Lilley's opinions are not consistent with the treatment notes," and (3) "Dr. Lilley's opinion that the claimant cannot sustain work is a determination that is reserved for the Commissioner." (R. at 22.)

Plaintiff's contentions of the contrary are unavailing. First, the ALJ did not err in considering whether Dr. Lilley was a treating source and whether her opinion was entitled to controlling weight. (Pl.'s Statement of Errors at 8, ECF No. 9.) Pursuant to 20 C.F.R. § 416.927(a)(2), "treating source" is defined as follows:

> Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have

an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.927(a)(2). Thus, to qualify as a treating source, a physician must have an "ongoing treatment relationship" with the claimant. *Id.* A Court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) (finding that "two examinations did not give [the physician] a long term overview of [the claimaint's] condition.").

As an initial matter, by assigning "little" weight to Dr. Lilley's opinions and stating that Dr. Lilley "only treated the claimant on a few occasions and thus . . . did not have a longitudinal perspective of the claimant's functioning," it can be inferred that the ALJ declined to find that Dr. Lilley was a treating source. (R. at 22); *see* 20 C.F.R. § 416.927(c)(2) (explaining that the reason deference is given to opinions of a treating source is because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . .."). Here, the ALJ specifically concluded that Dr. Lilley could not provide a longitudinal picture of Plaintiff's impairments.

Furthermore, the undersigned is not persuaded that Dr. Lilley was a treating source as

defined in 20 C.F.R. § 416.927(a)(2).   Dr. Lilley's August 7, 2017 opinion specifically states

that she has "not engaged in [Plaintiff's] treatment:"

> The following are an addendum to the information provided to ODD on 2.29.16, and are provided at the request of Cutter Hall Karlock LLC.

> [Plaintiff] was seen for evaluative purposes in my office on 7.23.15, 8.22.15, 11.19.15, and 6.29.16.   She has not been seen since 11.19.15 and I have not engaged in her treatment.   A summary of that evaluation and diagnostic findings were provided to ODD.

(R. at 830.)   Based on Dr. Lilley's representations, it appears that she evaluated Plaintiff for the

purpose of providing a report in support of her disability claim, not based on a medical need for

treatment.   *See* 20 C.F.R. § 416.927(a)(2) ("We will not consider an acceptable medical source

to be your treating source if your relationship with the source is not based on your medical need

for treatment or evaluation, but solely on your need to obtain a report in support of your claim

for disability."); *see also Boucher v. Apfel*, 238 F.3d 419 (6th Cir. 2000) (finding that the ALJ

correctly considered evaluating psychologists nontreating sources where "plaintiff consulted

with [them] solely for the purpose of reporting to varying agencies").

Additionally, Dr. Lilley only saw Plaintiff on a handful of occasions, which was not

typical of the nature and frequency with which Plaintiff received treatment for her mental health

impairments.   *See* 20 C.F.R. § 416.927(a)(2) (explaining that the ALJ "may consider an

acceptable medical source who has treated or evaluated you only a few times . . . to be your

treating source if the nature and frequency of the treatment or evaluation is typical for your

condition(s)"); (*see also* Treatment Records, *generally*, R. at 309-900 (demonstrating frequent,

continuous treatment and evaluation from treating mental health specialist, Jodi Kauble, and

treating psychiatrist, Dr. Eric Kahn)); *see also Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551,

556 (6th Cir. 2016) (noting that "the handful of visits Downs had with Dr. Murphy do not necessarily render Dr. Murphy a 'treating source' with an 'ongoing treatment relationship'").

Furthermore, when asked about her current treatment, Plaintiff responded:

> A. Well, I see three different people. One, Jod[i] [Kauble], she comes to the house, like, usually, every two weeks, and she sees both me and my sister. Then I see Dr. Kahn, who, I guess, is a psychiatrist. He kind of just prescribes medications, basically. He doesn't really try to help, like, give ideas on how to improve. That's usually what Jod[i] does. And I see –
>
> Q. Sure.
>
> A. – Chris Frazer a couple times a year. I don't see him as often as other people in my family do. It's kind of a family thing for Christian counseling, basically. And – but I don't go to that very often, only every couple months, really.

(R. at 42-43.) Plaintiff did not mention any ongoing treatment relationship with Dr. Lilley. (*Id.*) She also did not submit any treatment notes from Dr. Lilley demonstrating an ongoing treatment relationship. *See Francis v. Comm'r of Soc. Sec.*, No. 2:17-CV-1022, 2018 WL 4442596, at *8 (S.D. Ohio Sept. 18, 2018) ("To the extent other records exist that would establish a treating relationship, it was Plaintiff's burden to supply those records.") (citing 20 C.F.R. § 404.1512(a)(1)). Indeed, despite Dr. Lilley's report stating that she evaluated Plaintiff on a few different occasions, Plaintiff submitted no records from those evaluations. Dr. Lilley's February 2016 assessment also states that Plaintiff "has been in treatment w[ith] another clinician for last several years," and refers to those treatment records in response to certain questions. (R. at 438-39.) Based upon the foregoing, the undersigned is not persuaded that Dr. Lilley had an ongoing treatment relationship with Plaintiff.

Nonetheless, even if Dr. Lilley were a treating source, the ALJ appropriately considered her opinions and reasonably declined to assign them controlling weight. Here, the ALJ

13

reasonably discounted Dr. Lilley's opinions based on his finding that they were not consistent

with the treatment notes in the record.   The ALJ first found that Dr. Lilley's opinion that

"claimant resisted leaving home, could not attend college and had no interests outside the home,"

was not supported by evidence in the record, which instead reflected that Plaintiff "was able to

complete college courses, attend a convention where she met her favorite actor and occasionally

go out to eat and go to church."   (R. at 22.)   In other parts of his decision, the ALJ considered

that Plaintiff "had a summer internship," "was able to go on vacation," and "was able to

complete college courses, take multiple tests in a week, and graduate."   (R. at 21-22.)   These

findings are supported by substantial evidence in the record.   (*See, e.g.*, Treatment Notes, R. at

609 ("Clt had three tests last week.   She had an increase in anxiety, however she used coping

skills to manage anxiety.   She reports that she didn't have a panic attack or throw up.   Classes

are going well."); R. at 637 ("Discussed recent symptoms and how clt is doing with summer

internship."); R. at 681 ("Clt finished up her class and graduated from Columbus State"); R. at

683 ("Discussed how clt did on trip and how clt managed anxiety during trip."); R. at 687 ("Clt

got in her application for OSU."); R. at 699 ("Clt did well on family vacation and has been more

willing to leave the house.   She was more depressed after vacation was over.   Clt expressed a

willingness to keep fighting."); R. at 809 ("Pt went to another convention for her TV idol and

spoke to him briefly again which was positive.").)   (*See also* Pl.'s Testimony, R. at 48

(explaining that she met a classmate at Westerville Library to work on a project); R. at 54

(testifying that she will go out to eat "if it's someplace [she] really likes"); R. at 37 (testifying

that she still plans to enroll in OSU part-time).).

The ALJ also found that Dr. Lilley's opinion that Plaintiff's symptoms did not respond to

treatment was inconsistent with Plaintiff's testimony that her medications helped her and treatment notes in the record showing improvement.  (R. at 22.)  The ALJ's finding is supported by substantial evidence in the record.  Plaintiff testified that her medications help. (R. at 42.)  Treatment notes in the record also demonstrate that Plaintiff responded to medications and treatment.  (*See, e.g.,* R. at 725, 730, 745, 770, 779, 789, 794, 820.)  On July 4, 2017, Plaintiff's treating psychiatrist, Dr. Kahn, noted that Plaintiff is "doing well, meds are 'perfect.'"  (R. at 820.)

The ALJ also found Dr. Lilley's opinions inconsistent with records of psychological testing, which did not reveal abnormal findings.  (R. at 22 (citing R. at 550-707, 708-827).)  For example, Dr. Kahn performed a mental status examination on June 20, 2017, and noted that Plaintiff had normal appearance/behavior; normal gait/ movement; normal speech/ language; euthymic mood; full-range effect; normal thought process/ orientation; no hallucinations; no suicidal/ self-injurious behaviors; no homicidal behaviors; normal orientation/ attention/ concentration; normal memory/ fund of knowledge; and good judgment/ insight.  (R. at 815.) On April 27, 2015, consultative examiner John S. Reece, Psy.D., noted largely normal findings on mental status examination and found that Plaintiff was "mildly" anxious.  (R. at 346-348.) Thus, even if Dr. Lilley were a treating physician, the ALJ reasonably declined to assign her opinions controlling or any other significant weight.  *See Blakely*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.'").

The ALJ set forth two additional reasons that support his decision to discount Dr. Lilley's

opinions. As set forth above, the ALJ found that "Dr. Lilley only treated the claimant on a few occasions and thus she did not have a longitudinal perspective of the claimant's functioning." (R. at 22.) The ALJ appropriately considered Dr. Lilley's treatment relationship with Plaintiff in discounting her opinions. *See* 20 C.F.R. § 404.1527(c)(2) (identifying the length of the treatment relationship and frequency of examination and the nature and extent of the treatment relationship as relevant considerations in weighing a medical opinions). The ALJ also appropriately rejected Dr. Lilley's opinion that Plaintiff cannot sustain work because such a determination is reserved to the Commissioner. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (explaining that "the conclusion of disability is reserved to the [Commissioner]"). Although the ALJ will consider opinions of physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511.

In summary, the undersigned finds no error in the ALJ's consideration and weighing of Dr. Lilley's opinions. Although Plaintiff points to some evidence that could support an alternative finding (Pl.'s Statement of Errors at 10-11, ECF No. 9), the ALJ's findings were within the ALJ's permissible "zone of choice," and the undersigned will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406; *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

**B.    The ALJ's RFC Assessment and Hypothetical to the VE**

Plaintiff next asserts that the ALJ's finding that Plaintiff "will be off tasks 8% of the time, approximately five minutes per hour" is not supported by substantial evidence.   (Pl.'s Statement of Errors at 11-14, ECF No. 9.)   Plaintiff contends that the ALJ "provided no support for how he determined that Plaintiff would be off task 8% of the work day, as opposed to 7%, 10% or some other figure."   (*Id*. at 12.)   Within this contention of error, Plaintiff asserts that the ALJ failed to specifically address her reports of panic attacks and "shutting down" and how they affect her ability to remain on task.   (*Id.*)   As a result, Plaintiff asserts, the hypothetical to the VE did not account for all of her mental limitations, and the VE's testimony cannot constitute substantial evidence that she is able perform work in the national economy.   (*Id.*)   The Commissioner counters that the RFC was supported by substantial evidence and that because no medical source opined that Plaintiff "required any time to be off task, let alone five minutes per hour, the ALJ was reasonable in allowing Plaintiff to be off task approximately five minutes per hour based solely on her subjective report at the hearing."   (Def.'s Mem. in Opp. at 15, ECF No. 16.)   The undersigned agrees with the Commissioner and finds Plaintiff's second contention of error to be without merit.

As an initial matter, the ALJ adequately considered Plaintiff's testimony regarding panic attacks and "shutting down" in assessing her RFC.   At the hearing, Plaintiff testified that she has panic attacks when something frightens her, such as death and dying.   (R. at 39.)   She stated that she has panic attacks "like every other day," and that they last for "like, half an hour."   (R. at 39-40.)   She testified that she hyperventilates, shakes, and gets nauseous when having a panic attack, and that, if it occurs in public, she tries to mask it.   (R. at 39-40.)   Regarding "shutting

down," Plaintiff testified that when she gets "stressed out," it is hard for her to do anything and she shuts down.   (R. at 38-39.)   She explained that she "feel[s] like [she] can't do anything except try to – [ ] basically try to force myself to finish it."   (*Id.*)

The ALJ's analysis demonstrates that he sufficiently considered Plaintiff's allegations of panic attacks, shutting down, and intrusive thoughts.   The ALJ expressly considered Plaintiff's testimony that she "has panic attacks and that they last for about half an hour and she hyperventilates and gets nauseous."   (R. at 19.)   He further considered her testimony that if a panic attack occurs in public, "she tries to 'mask' it and goes to the bathroom."   (*Id.*) Additionally, the ALJ considered Plaintiff's testimony that she "is unable to work because she gets stressed out easily," as well as her reports of anxiety.   (R. at 19.)   Although the ALJ did not specifically mention Plaintiff's testimony regarding "shutting down," it is well established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision."   *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (citations omitted).

Moreover, the ALJ specifically stated that he "considered all of the evidence in the record and f[ound] it to be inconsistent with [Plaintiff's] subjective allegations."   (R. at 22.)   The ALJ explained this finding as follows:

> In addition to the above medical evidence and opinions, I have considered all
> evidence of record and find it to be inconsistent with her subjective allegations.

As discussed throughout the record above, the claimant performs many activities that are not consistent with her allegations of total disability. The treatment notes revealed that she had a summer internship, attended college classes, went to a convention to see her favorite actor and was able to go on vacation (Exhibits 9F/88, 132-134, 10F/102). At the hearing, the claimant explained that she went on a family vacation and convention but that this was the first one she had gone to in years. However, the record shows that she went on vacation in August 2016 (Exhibit 9F/132-134) and she went to "another convention" to see her favorite actor in May 2017 (Exhibit 10F/102). Throughout treatment notes, the claimant was documented to have moderate symptoms and often did not have any abnormal findings on mental status evaluations. Overall, the record is not consistent with her subjective allegations.

(R. at 22.) Thus, the ALJ did not find Plaintiff's subjective complaints regarding her symptoms to be fully consistent with the record.[2]

Furthermore, after providing an overview of Plaintiff's subjective reports and the objective medical evidence, the ALJ explained that Plaintiff's allegations were "included in the [RFC] to the extent that they are consistent with the evidence as whole." (R. at 22.) With respect to being off-task, the ALJ explained as follows:

I find that due to her combination of impairments she would be off task 8% of the time, approximately five minutes per hour and can tolerate occasional changes in the workplace. Overall, the records show that the claimant does have some mental health symptoms but overall she reported improvement with medication and counseling (Exhibits 9F, 10F). She has supportive family and receives consistent treatment and, as a result, the evidence shows that she has primarily moderate symptoms and normal findings on mental status testing.

(R. at 21.) Plaintiff's contention that the ALJ failed to support this finding with specific evidence is unavailing, as the ALJ reached his RFC determination after providing an overview of Plaintiff's testimony, activities of daily living, and treatment records. (R. at 19-21.) The

---

2 Plaintiff does not challenge the ALJ's credibility analysis, and the undersigned declines to disturb it. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citations omitted)).

undersigned finds that the ALJ adequately explained his rationale for providing leeway for Plaintiff to be off tasks 8% of the day, approximately five minutes per hour.[3]

Plaintiff, on the other hand, fails to point to any evidence that would support additional RFC restrictions. *See* 20 C.F.R. § 416.912 (explaining Plaintiff has burden of proving she is disabled). In fact, Plaintiff's medical records only refer to panic attacks on one occasion. (R. at 703 ("Clt reports having recent panic attacks.").) The consultative examiner, Dr. Reece, specifically noted that "[n]o panic attacks were reported," but noted she reported "periods of increased anxiousness with only shortness of breath and nausea." (R. at 347.) Dr. Lilley's reports also do not mention panic attacks. (R. at 437, 830-32.) And although Plaintiff points to several records that document her reports of "intrusive" thoughts, she fails to point to any evidence demonstrating that they would cause her to be off task more than approximately 5 minutes per hour. (*See* Pl.'s Statement of Errors at 12, ECF No. 9 (citing R. at 311, 355, 437, 589, 605, 695, 697, 703).) Plaintiff also fails to point to any evidence demonstrating the length of her "intrusive thoughts" and to explain what additional limitations the ALJ should have included in her RFC. *See Ware v. Comm'r of Soc. Sec.*, No. 2:17-CV-01015, 2019 WL 696945, at *11 (S.D. Ohio Feb. 20, 2019) ("[W]here a plaintiff challenges an ALJ's mental-health related findings but does not explain what limitations the ALJ erred in excluding or point to any evidence from within the applicable period suggesting that she had additional mental-health related restrictions, then the plaintiff's challenge is meritless") (citing *McNier v. Comm'r of Soc.*

---

3 The undersigned notes that Plaintiff would also have regularly scheduled breaks throughout the day. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 724 (6th Cir. 2013) (finding that breaks every two hours are "normal and assumed to be present in most jobs").

*Sec.*, 166 F. Supp. 3d 904, 914 (S.D. Ohio Feb. 23, 2016)).   Accordingly, the undersigned finds

no error in the ALJ's RFC assessment.

Finally, the ALJ properly relied upon the VE's testimony in determining that Plaintiff

could perform work in the national economy.   The Sixth Circuit has "held repeatedly that the

testimony of a vocational expert identifying specific jobs available in the regional economy that

an individual with the claimant's limitation can perform can constitute substantial evidence

supporting an ALJ's finding at step 5 that the claimant can perform other work.'"   *Staymate v.*

*Comm'r of Soc. Sec.*, 681 F. App'x 462, 469 (6th Cir. 2017) (quoting *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted)).   "In order for a vocational expert's

testimony in response to a hypothetical question to serve as substantial evidence in support of the

conclusion that a claimant can perform other work, the question must accurately portray a

claimant's physical and mental impairments."   *See Ealy*, 594 F.3d at 516.   In formulating the

hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by

the finder of fact."   *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

1993).

The undersigned finds that the ALJ's hypothetical question incorporated all of the

limitations that the ALJ found credible and supported by the evidence and, therefore, was proper.

As set forth above, Plaintiff fails to identify any evidence the ALJ found credible that

demonstrates she would be off task more than five minutes per hour or that supports additional

RFC restrictions.

Furthermore, Plaintiff's contention that the RFC assessment was not "sufficiently specific

enough to rule out a work preclusive off task limitation," (Pl.'s Statement of Errors at 13, ECF

No. 9), is unavailing. In posing the hypothetical to the VE, the ALJ specifically stated that the hypothetical individual with Plaintiff's age, education, and RFC "would be off task 8% of the time, which is roughly five minutes per hour." (R. at 56.) The VE testified that the hypothetical individual could perform jobs such as laundry worker, machine packager, and floor technician. (R. at 56-57.) On cross-examination, Plaintiff's counsel asked the VE if it would make a difference if Plaintiff was off-task 8% of the day, but instead of for five minutes per hour, for two additional twenty-minute breaks or one additional forty-minute break. (R. at 58.) The VE testified that it would make a difference and that under the scenario presented by Plaintiff's counsel, the amount of time off-task would be problematic. (R. at 58-59.) Based on this testimony, Plaintiff argues the RFC assessment does not rule out a work preclusive off-task limitation. The undersigned is not persuaded. The ALJ's hypothetical to the VE specifically stated that Plaintiff "would be off task 8% of the time, which is roughly 5 minutes per hour." (*See also* Plaintiff's RFC at R. 18-19 (determining "Plaintiff will be off tasks 8% of the time, approximately five minutes per hour.").) The VE clearly interpreted the hypothetical to mean that Plaintiff would be off task for *five minutes per hour*, as opposed to some other combination of time that amounts to 8% of the work day. Indeed, under the ALJ's hypothetical, the VE found that Plaintiff could perform work. (R. at 56-57.) When Plaintiff's counsel altered the hypothetical from being off-task for five minutes per hour to two additional twenty-minute breaks or one additional forty-minute break, the VE testified that it would "make a difference" and pose a problem. (R. at 58-59.) Thus, the ALJ clearly understood the ALJ's hypothetical and interpreted it to mean that Plaintiff would be off task for five minutes per hour, not some other combination of time that amounts to 8% of the day.

Accordingly, the ALJ did not err in relying on the VE's testimony to conclude that she can perform jobs in the national economy. The undersigned therefore **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## V.        DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.        PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


               * /s/ Chelsey M. Vascura*           
               CHELSEY M. VASCURA
               UNITED STATES MAGISTRATE JUDGE